UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NATHANIEL ISAAC,

<table>
<tr><td>Plaintiff,</td><td>REPORT AND RECOMMENDATION</td></tr>
<tr><td></td><td>16-CV-4729 (KAM)</td></tr>
<tr><td>-against-</td><td></td></tr>
</table>

THE CITY OF NEW YORK, et al.,

                   Defendants.
----------------------------------------------------------x

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

Plaintiff Nathaniel Isaac ("plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against the City of New York (the "City"), and employees of the New York Police Department (the "NYPD"), i.e., Police Officer ("P.O.") Roberto Assencao, P.O. Lisaura Messa, Lieutenant ("Lt.") Brian Kenny, Detective ("Det.") John Hachadoorian, Det. Ronald Buell (collectively, "defendants"), along with John Does 1-10, alleging violations of his constitutional rights and related state law claims.  See Amended Complaint (Jan. 3, 2017) ("Am. Compl."), Electronic Case Filing Docket Entry ("DE") #13.  Currently pending before this Court, on a referral from the Honorable Kiyo A. Matsumoto, is defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  See Electronic Order Referring Motion (Apr. 27, 2018); Motion to Dismiss (Oct. 24, 2017), DE #39.

For the reasons discussed below, this Court recommends that defendants' Rule 12(c) motion be granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are drawn from plaintiff's Amended Complaint and are accepted as true for purposes of this motion.

### I.  Plaintiff's First Arrest

At approximately 7:50 p.m. on May 27, 2008, Gagan Kharbanda and George Stefas were standing on 22nd Street between 39th and 40th Avenues in Long Island City, Queens, New York,[1] when they saw two boxes fall from the roof of 39-40 22nd Street, an industrial warehouse that was across the street and up the block from where they were standing.  See Am. Compl. ¶ 39.  Kharbanda and Stefas then observed a person slide down a pole that was attached to the side of the building, land on the street and run away, leaving the boxes in front of the building.  See id. ¶ 40.  Kharbanda called 911 and described the person he had seen as a 40-year old black male, who ran down 22nd Street toward 40th Avenue, and made a right turn onto 40th Avenue.  See id. ¶ 41.

NYPD Officers Assencao and Messa of the PSA 9th Precinct were driving south on 22nd Street towards 40th Avenue when they were flagged down by Stefas.  See id. ¶¶ 42, 43.  As they were being flagged down, the officers heard over the police radio the information provided to the 911 operator by Kharbanda.  See id. ¶ 43.  When the officers pulled over, Stefas and Kharbanda told them the same information that Kharbanda had provided the 911 operator.  See id. ¶ 44.  At this time, there were several people on the block, including plaintiff, who was about 100 feet away, walking on 22nd Street toward 39th Avenue, the direction opposite from that of the man whose actions had been described by Kharbanda to the 911 operator.  See id. ¶ 45.  "Other than being a black male, plaintiff did not match the

[1] Both men worked for Venus Auto Parts, located at 39-11 22nd Street.  See Am. Comp. ¶ 39.

description" provided to the 911 operator and transmitted over the police radio, or the description provided by the two civilian witnesses in person. See id. ¶ 46. Nevertheless, the officers drove over to plaintiff and immediately stopped and handcuffed him. See id. ¶ 47. Plaintiff was carrying only a small bag containing his personal effects. See id. ¶ 48. Lt. Kenny, the officers' supervisor, arrived at the scene, whereupon Stefas and Kharbanda gave him the same information that had been communicated to the 911 operator and Officers Assencao and Messa. See id. ¶ 49.

Officer Assencao and Lt. Kenny went up to the roof of 39-40 22nd Street to investigate, along with members of the NYPD's Emergency Services Unit ("ESU"). See id. ¶¶ 51-52. None of the officers saw any signs of forced entry into the building or the adjoining buildings, or any property damage. See id. ¶¶ 52-53. Officers Assencao and Messa, with Lt. Kenny's authorization, then arrested plaintiff for trespassing and Assencao vouchered the two boxes, which contained women's shoes.[2] See id. ¶ 54.

Later that day, or early the next morning, Assencao told Assistant District Attorney ("ADA") Richard Giordano of the Queens County District Attorney's Office that there were no signs of forced entry at the subject building or the adjoining premises. See id. ¶ 55. Nevertheless, in order to justify the arrest, and to corroborate the statement of one of the civilian witnesses that the person from the roof had been pushing a shopping cart, Assencao falsely added that when he stopped plaintiff, plaintiff was pushing a shopping cart. See id. ¶ 56. Assencao also falsely told ADA Giordano that he had seen plaintiff carrying the two boxes of women's shoes and that Kharbanda and Stefas identified plaintiff as the person they

---

[2] Elsewhere in the Amended Complaint, plaintiff alleges that plaintiff "had been arrested, searched, handcuffed, and placed in a police vehicle immediately upon being stopped by Assencao and Messa." Am. Compl. ¶ 61.

had observed throw the boxes off the roof.  See id. ¶¶ 57, 58.  In addition, Assencao falsely told Giordano that plaintiff was the only other person on the block when Assencao and Messa stopped him.  See id. ¶ 60.  According to the Amended Complaint, Assencao lied in an effort to convince the prosecutors that plaintiff's arrest was proper and thereby protect the officers and their precinct.  See id. ¶ 62.  The lies he told them appeared in the Criminal Court complaint, which was signed by Assencao.  See id. ¶ 65.

Plaintiff was subsequently arraigned in Queens County Criminal Court on one count of Criminal Trespass in the Third Degree, a class B misdemeanor.  See id. ¶ 64.  Plaintiff pled not guilty, was unable to post bail, and was not released from custody until June 2, 2008, when the prosecution failed to convert the criminal complaint into an information and the charge was dismissed.  See id. ¶¶ 70-71.

## II. Plaintiff's Second Arrest

Meanwhile, on May 29, 2008, Paoling Hsia, the owner of the building located at 39-35 21st Street, which was one of the buildings adjacent to the building located at 39-40 22nd Street, returned from a six-day absence.  See id. ¶ 72.  Hsia discovered that one of her building's second-floor windows was broken, and that bricks that had been used to secure the window frame and a metal security gate had been removed.  See id.  Hsia also observed that 8 of the 10 cartons of boots that had been stored on the second floor were missing, along with a circular saw, a compressor, and a 70- to 100-pound generator.  See id. ¶ 74.  Hsia reported the incident to the police, and she met with Det. Hachadoorian on June 19, 2008.  See id. ¶¶ 75-76.  At that meeting, Det. Hachadoorian showed Hsia the two boxes of shoes that had been vouchered by P.O. Assencao in connection with plaintiff's May 27, 2008 arrest, but Hsia

could not definitively identify the shoes as having been taken from her warehouse.  See id. ¶¶ 76-77.

On June 24, 2008, Det. Hachadoorian interviewed Kharbanda, who repeated the same story he had told the 911 operator and Assencao and Messa on the day of plaintiff's arrest. See id. ¶ 79.  Det. Hachadoorian falsely recorded in his notes that Kharbanda told him that the person Assencao and Messa stopped on May 27, 2008 was the same person he had observed pushing boxes off the roof.  See id. ¶ 80.

On June 25, 2008, plaintiff was arrested again and charged with one count each of Burglary in the Third Degree, Criminal Mischief in the Third Degree and Criminal Possession of Stolen Property in the Fourth Degree.  See id. ¶ 85.  The criminal complaint filed in Queens County Criminal Court was signed by Det. Hachadoorian, see id. ¶ 87, and stated the following:  The building located at 39-35 21st Street, which was adjacent to the building located at 39-40 22nd Street, housed a company named Forenzi Incorporated.  See id. ¶ 88. The complaint falsely stated that on May 29, 2008, Paoling Hsia, the owner of Forenzi Incorporated and its building, observed that the fence on the roof of 39-40 22nd Street had been dislodged from a post, and that a window frame on a second-story window of the Forenzi Incorporated building had been removed and the window pane broken, but that the fence had been undamaged when Hsia had last left the building on May 23, 2008.  See id. ¶¶ 88-90. "[O]ne generator, one compressor, one circular saw and an unknown quantity of shoes" were discovered missing from inside the building.  See id. ¶ 89. [3]  The new criminal complaint also falsely stated that Kharbanda told Det. Hachadoorian that he had seen plaintiff throw two boxes

---

[3] According to the pleading, the generator, compressor, circular saw, and "cartons of boots" taken from the warehouse were never recovered.  See Am. Compl. ¶ 133.

off the roof of 39-40 22nd Street, jump down and run away with the two boxes.  See id. ¶ 91.

Hachadoorian further falsely stated in the criminal complaint that P.O. Assencao had recovered

the two boxes, containing approximately 24 pairs of shoes, from plaintiff's person.  See id.

¶ 92.

Plaintiff pleaded not guilty to the charges and, again unable to afford bail, remained

incarcerated.  See id. ¶¶ 97-98.

Thereafter, P.O. Assencao and Det. Hachadoorian gave false testimony to the grand

jury.  See id. ¶¶ 99-100.  P.O. Assencao testified that "a complainant" had reported that

plaintiff tossed the boxes of women's shoes off the roof, and, Assencao claimed, plaintiff had

been pushing a shopping cart when he stopped him.  See id. ¶¶ 101-03.  Assencao further

falsely testified that when stopped, plaintiff admitted that prior to the officers' arrival, he had

been looking at the boxes of women's shoes.  See id.  ¶¶ 106-07.  Assencao also falsely

testified that when he went to the roof to investigate, he observed that a portion of the fence

separating the buildings located at 39-40 22nd Street and at 39-35 21st Street was peeled up at

the corner.  See id. ¶¶ 108-09.

In his appearance before the grand jury, Det. Hachadoorian repeated the false

statements he had made in the second Criminal Court complaint.  See id. ¶ 112.

Plaintiff was subsequently indicted for Burglary in the Third Degree, Criminal Mischief

in the Fourth Degree, Trespass in the Third Degree and Criminal Possession of Stolen

Property in the Fifth Degree.  See id. ¶ 115.  Plaintiff pleaded not guilty to all counts of the

indictment.  See id. ¶ 117.

In July 2010, plaintiff was tried without a jury before the Honorable Stephen Knopf in Queens County Criminal Court.  See id. ¶ 125.  Plaintiff, proceeding *pro se*, unsuccessfully moved to preclude Kharbanda's testimony on the ground that the prosecution had failed to produce the recording of Kharbanda's 911 call.[4]  See id. ¶¶ 126, 128.  Kharbanda was unable to make an in-court identification of plaintiff at trial.  See id. ¶ 131.  Kharbanda testified that on May 27, 2008, he saw a person throw boxes off the roof of 39-40 22nd Street.  See id. ¶ 136.  That person fled with the boxes in a shopping cart, but later returned and placed the boxes in front of 39-40 22nd Street.  See id.  According to Kharbanda, when the police arrived on the scene, he pointed out the person he had observed on the roof.  See id.  Plaintiff alleges that Kharbanda's testimony was false and the result of pressure from defendants.  See id.

Hsia testified that on May 29, 2008, she observed that the fence on the roof of 39-40 22nd Street was dislodged from a post and that when she had last seen the fence on May 22, 2008, it was undamaged.  See id. ¶ 135.  Hsia later admitted that the police told her what to say in her grand jury and trial testimony.  See id.

Officer Assencao also testified at plaintiff's trial and, the pleading alleges, gave the following false testimony: Upon Assencao's arrival at the scene, Kharbanda described his observations and pointed out plaintiff as the person he had seen on the roof; when the officers stopped him, plaintiff was pushing a shopping cart and was the only person on the street.  See id. ¶ 137.[5]  Assencao also falsely testified that when he went up to the roof, he observed that a

---

[4] Plaintiff contends that the prosecution also refused to produce records created by ESU officers in connection with their search and investigation of the roof of 39-40 22nd Street.  See Am. Compl. ¶ 129.

[5] The Amended Complaint also asserts that defendants fabricated evidence that the seized boxes "were recovered from plaintiff; [and] that plaintiff admitted to having looked at and/or possessed those boxes[.]" Am. Compl. ¶ 140.  However, the pleading is unclear as to whether that allegedly fabricated evidence was presented through testimony at trial and, if so, from Assencao and/or the civilian witness.

portion of the fence separating the roof of 39-40 22nd Street from that of 39-35 21st Street was peeled up in the corner.  See id.

On July 21, 2010, after the close of the People's case, the trial court dismissed the trespass count on the ground that no evidence had been adduced that plaintiff was on property without permission or authority of the property's owner.  See id. ¶ 138.  The court found plaintiff guilty of one count each of Third Degree Burglary, Fourth Degree Criminal Mischief and Fifth Degree Criminal Possession of Stolen Property.  See id. ¶ 143.  On September 8, 2010, plaintiff was sentenced to 3½ to 7 years in state prison on the burglary conviction, to run concurrently with one-year sentences on the criminal mischief and criminal possession of stolen property counts.  See id. ¶ 146.

On October 8, 2014, on appeal to the Appellate Division, Second Department, plaintiff's judgment of conviction was reversed and the indictment dismissed due to the prosecution's "fail[ure] to adduce legally sufficient evidence of his guilt with respect to the burglary and criminal mischief counts."  See id. ¶ 149.[6]   The state appeals court found that the prosecution "adduced no proof as to, inter alia, the time of the burglary that formed the basis of those counts."  See id.[7]  Although the evidence showed that plaintiff was in possession of some of the alleged proceeds of the burglary, "there was no other evidence connecting him to the burglary or the damage to the warehouse . . . ."  Id. (quoting People v. Is[a]ac, 121 A.D.3d 816, 817 (2d Dep't 2014)).

---

[6] Finding a violation of plaintiff's right to counsel, the Second Department also reversed plaintiff's conviction for possession of stolen property and ordered dismissal of that count, because plaintiff had already served the maximum sentence for that crime.  See People v. Is[a]ac, 121 A.D.3d 816, 817-18 (2d Dep't 2014).

[7] The prosecutor conceded at trial that the burglary did not occur on May 27, 2008, the date of plaintiff's initial arrest.  Am. Compl. ¶ 132.

8

On October 9, 2014, plaintiff was released from custody, see id. ¶ 150, and, on

November 7, 2014, the criminal case against him was dismissed by the Supreme Court,

Queens County, see id. ¶ 151.

## PROCEDURAL HISTORY

The City removed the instant civil action to this Court from the Supreme Court, Queens

County, on August 24, 2016.  See Notice of Removal (Aug. 24, 2016), DE #1.  Plaintiff filed

his Amended Complaint on January 3, 2017, see Amended Complaint (Jan. 3, 2017), DE #13,

and defendants answered on January 31, 2017, see Answer (Jan. 31, 2017), DE #25.  The

Amended Complaint contains nine counts, the first six of which are asserted under section

1983, against all the individual (and John Doe) defendants: malicious prosecution, malicious

abuse of process, failure to intervene, unreasonably prolonged detention, denial of fair trial,

and Brady violations.  The seventh count, a Monell claim against the City, asserts a cause of

action for municipal liability under section 1983.  The eighth count charges supervisory

defendants Kenny and Buell, under section 1983, with failure to train and/or supervise.  The

ninth and final count alleges violations of the New York State Constitution.  See generally Am.

Compl.

Following proceedings before this Court and Judge Matsumoto, and the exchange of

documentary discovery, see, e.g., Motion for Reconsideration (Nov. 2, 2017) ("11/2/17

Letter") at 2, DE #45,[8] defendants filed their motion for judgment on the pleadings.

---

[8] Although fact discovery, which closed on October 31, 2017, had not been stayed, see Electronic Order (Nov. 1, 2017), the parties reportedly conducted no depositions, see 11/2/17 Letter at 2.

## DISCUSSION

**I.    Motion to Dismiss Legal Standard**

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Hogan v. Fischer, 738 F.3d 509, 514-15 (2d Cir. 2013).  In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the complaint's factual allegations as true, drawing all reasonable inferences in favor of the plaintiff.  See Christiansen v. Omnicom Grp., Inc., 852 F.3d 195, 199 (2d Cir. 2017).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Hogan, 738 F.3d at 514. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.  A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" Id. at 570.

In evaluating a complaint being challenged on a motion to dismiss, courts are limited to the facts alleged therein, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  Where a complaint relies heavily upon the terms and effect of a document not incorporated by reference, the Court may consider such an "integral" document

on a motion to dismiss, but only where it is "clear on the record that no dispute exists

regarding [the document's] authenticity or accuracy[.]" Id. (quoting Faulkner v. Beer, 463

F.3d 130, 134 (2d Cir. 2006)) (internal quotation marks omitted).  Courts may also "take

judicial notice of documents in the public record . . . ." Redd v. Leftenant, No. 16-CV-4919

(JFB)(SIL), 2017 WL 9487173, at *4 (E.D.N.Y. Aug. 9, 2017) (internal quotation marks

omitted), adopted, 2017 WL 3973926 (E.D.N.Y. Sept. 7, 2017), appeal pending.

        In support of their motion to dismiss, defendants have submitted and rely upon several

extra-pleading documents, including an arrest report, complaint report, DD-5, Sprint Report,

Criminal Court Complaint, transcript of trial testimony, and Intake Bureau crime reports.  See

Declaration of Qiana Smith-Williams and Exs. B-H (Oct. 24, 2017), DE #41.   While district

courts in this Circuit have repeatedly ruled that court records (such as indictments and criminal

court orders) may be judicially noticed on a motion to dismiss, there is disagreement as to

whether police reports and records may be judicially noticed.  See Bejaoui v. City of New

York, No. 13-CV-5667 (NGG)(RML), 2015 WL 1529633, at *5-6 (E.D.N.Y. Mar. 31, 2015)

(collecting cases).  In any event, it is settled law that where the court takes judicial notice, it

considers such records "not for the truth of the matters asserted," but only "to determine what

statements [they] contained . . . ." McLennon v. New York City, No. 13-CV-128

(KAM)(SMG), 2015 WL 1475819, at *4 (E.D.N.Y. Mar. 31, 2015) (internal quotation marks

omitted); see Ying Li v. City of New York, 15-CV-1599 (PKC), 246 F.Supp.3d 578, 595-96

(E.D.N.Y. 2017).

**II.    Section 1983 Claims**

        Section 1983 provides that "[e]very person who, under color of any statute, ordinance,

11

regulation, custom or usage, of any State . . . , subjects, or causes to be subjected, any citizen

of the United States . . . to the deprivation of any rights, privileges, or immunities secured by

the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.

"Section 1983 provides a cause of action against any person who deprives an individual of

federally guaranteed rights 'under color' of state law."  Filarsky v. Delia, 566 U.S. 377, 383

(2012).  Section 1983 does not itself create substantive rights; rather, it "provides a method for

vindicating federal rights elsewhere conferred[.]"  Patterson v. County of Oneida, 375 F.3d

206, 225 (2d Cir. 2004) (internal quotation marks omitted).

### A.    Malicious Prosecution

Plaintiff asserts a claim for malicious prosecution against all defendants.  To state a

section 1983 claim for malicious prosecution, a plaintiff must allege a sufficient post-

arraignment restraint to violate his or her Fourth Amendment rights, as well as the four

elements of a malicious prosecution claim under New York law: (1) the initiation or

continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in

plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual

malice as a motivation for the defendant's action.  Manganiello v. City of New York, 612 F.3d

149, 160-61 (2d Cir. 2010); Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003).

Defendants contend that plaintiff has failed to satisfy the initiation and probable cause elements

of his claim.  See Defendants' Memorandum of Law in Support (Oct. 24, 2017) ("Def.

Mem.") at 7, DE #40.

### 1.    Initiation

Under New York law, police officers can "initiate" a prosecution by filling out

complaining and corroborating affidavits or signing felony complaints.  See Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010); Benitez v. City of New York, 17 CV 3827 (SJ) (SJB), 2018 WL 2973387, at *4 (E.D.N.Y. June 13, 2018); Ying Li, 246 F.Supp.3d at 605. An officer can also be found to have initiated a prosecution "'by creating material, false information and forwarding that information to a prosecutor or by withholding material information from a prosecutor.'"  Ying Li, 246 F.Supp.3d at 605 (quoting Costello v. Milano, 20 F.Supp.3d 406, 415 (S.D.N.Y. 2014)); accord Benitez, 2018 WL 2973387, at *4 (holding that officers initiated prosecution by manufacturing photo array and anonymous tip).

Defendants argue that although Officer Assencao and Det. Hachadoorian swore to criminal court complaints against plaintiff, they cannot be liable because they simply relayed information to the prosecutor's office from eyewitnesses and the complaining victim.  See Def. Mem. at 8.  Under defendants' theory, the prosecutor's exercise of independent judgment breaks the chain of causation initiated by the officers.  See id. at 7.  However, defendants "'cannot hide behind the decision of the DA to prosecute' when they, according to [p]laintiff's allegations, provided the prosecutor with false information."  Ying Li, 246 F.Supp.3d at 606 (quoting Blake v. Race, 487 F.Supp.2d 187, 211 (E.D.N.Y. 2007)); accord Benitez, 2018 WL 2973387, at *4; see also Zahrey v. Coffey, 221 F.3d 342, 352 (2d Cir. 2000) ("[I]t is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.").  Here, plaintiff alleges that Officer Assencao "lied" to prosecutors about what he observed and what occurred on May 27th, included this fabricated information in the initial criminal complaint, and testified falsely before the grand

13

jury.  See Am. Compl. ¶¶ 56-58, 60-62, 65-66, 101-04, 106-111.  Likewise, plaintiff alleges

that Det. Hachadoorian made false allegations in the criminal complaint that he signed,

repeated those false claims to the grand jury, and withheld exculpatory evidence from

prosecutors.  See id. ¶¶ 83, 87-93, 112.  These allegations, which are assumed to be true on

this motion, are sufficient to support a claim that Officer Assencao and Det. Hachadoorian

initiated the criminal prosecutions of plaintiff.

        As to Officer Messa, Lt. Kenny and Det. Buell, however, the Amended Complaint

contains insufficient factual allegations to support the inference that they "played an active role

in initiating [p]laintiff's prosecution."  Ying Li, 246 F.Supp.3d at 606-07.  Those defendants

are not alleged to have sworn to a criminal complaint or corroborating affidavit, testified

before the grand jury or at trial, or otherwise presented information to or encouraged the

prosecutors to pursue plaintiff's prosecution.[9]  Plaintiff's vague and conclusory allegations that

Messa and Kenny "knew that the many statements provided by P.O. Assencao" to the

prosecutors "were untrue and fabricated," Am. Compl. ¶ 63, see also id. ¶¶ 65, 67-68, that

the allegations contained in the first criminal complaint "came from" Messa, in addition to

P.O. Assencao, who was the deponent in the complaint, id. ¶ 65, and that Buell "knew that

several material allegations in the [second criminal] complaint were fabricated and false," id.

¶ 94, are insufficient as a matter of law to plausibly charge Officer Messa, Lt. Kenny and Det.

Buell with having initiated plaintiff's prosecution.  See Leibovitz v. City of New York, 14-CV-

7106(KAM)(LB), 2018 WL 1157872, at *14 (E.D.N.Y. Mar. 2, 2018); Ying Li, 246

---

[9] The pleading's assertion that "Kenny permitted Assencao and Messa to detain plaintiff without legal basis," Am. Compl. ¶ 50, does not implicate "post-arraignment deprivations of liberty," and thus fails to support a claim of malicious prosecution (as opposed to false arrest, which is not charged here) against Messa and Kenny.  See Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2d Cir. 1995); Leibovitz v. City of New York, 14-CV-7106 (KAM)(LB), 2018 WL 1157872, at *14 & n.16 (E.D.N.Y. Mar. 2, 2018).

F.Supp.3d at 606-07; Jean-Laurent v. Bowman, No. 12-cv-2954 (KAM)(LB), 2014 WL

4662221, at *6 (E.D.N.Y. July 7, 2014), adopted, 2014 WL 4662232 (E.D.N.Y. Sept. 18,

2014); see also Pizarro v. City of New York, No. 14-CV-507 (KAM)(VVP), 2015 WL

5719678, at *5 n.5 (E.D.N.Y. Sept 29, 2015) (dismissing malicious prosecution claims against

John Doe police captain and officers, where the complaint failed to allege "any facts

suggesting that [they] were in any way involved in the initiation of the prosecution."").

Therefore, this Court recommends that the malicious prosecution claim asserted against those

defendants be dismissed.

### 2.    *Probable Cause*

Defendants next argue that plaintiff cannot rebut the presumption of probable cause that

arises by virtue of his indictment by the grand jury.  See Def. Mem. at 8-9.  Moreover,

according to defendants, even apart from the presumption arising from the indictment,

probable cause existed to prosecute plaintiff based on the allegations of the eyewitnesses and

complaining victim.  See id. at 9-11.

"[T]he existence of probable cause is a complete defense to a claim of malicious

prosecution in New York."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

As an initial matter, the Court observes that the test for probable cause in the context of a

malicious prosecution claim should not be conflated with probable cause in the context of a

false arrest claim: while a false arrest claim will be defeated by the existence of probable cause

to arrest, the probable cause element of a malicious prosecution claim turns on "probability of

success"; in other words, "the relevant question is whether there was probable cause to believe

the prosecution of [the plaintiff] could succeed."  Boyd v. City of New York, 336 F.3d 72, 76

n.7 (2d Cir. 2003); Posr v. Court Officer Shield No. 207, 108 F.3d 409, 417 (2d Cir. 1999)

("The defendants seem to conflate probable cause to arrest with probable cause to believe that

Posr could be successfully prosecuted.  Only the latter kind of probable cause is at issue with

respect to a malicious prosecution claim[.]"); accord Pizarro, 2015 WL 5719678, at *4-5.

Because probable cause to prosecute is evaluated "in light of the facts known or reasonably

believed at the time the prosecution was initiated, as opposed to at the time of arrest[,]" Ying

Li, 246 F.Supp.3d at 611 (internal quotation marks omitted), the existence of probable cause to

arrest does not necessarily defeat a malicious prosecution claim, see Boyd, 336 F.3d at 77

(finding issues of fact as to whether criminal prosecution for possession of stolen property was

supported by probable cause even though police had probable cause to arrest the plaintiff on

that charge).  Moreover, unlike the defense of probable cause in the context of a false arrest

claim, "probable cause [to prosecute] must be shown as to each criminal charge underlying the

malicious prosecution claim." Burton v. Undercover Officer, 671 F.App'x 4, 5 (2d Cir. 2016)

(collecting cases).

An "indictment by a grand jury creates a presumption of probable cause that may *only*

be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of

evidence or other police conduct undertaken in bad faith." Savino, 331 F.3d at 72 (emphasis

in original) (internal quotation marks omitted); see McClellan v. Smith, 439 F.3d 137, 145 (2d

Cir. 2006).  In other words, "'[t]he presumption may be overcome only by evidence

establishing that the police witnesses have not made a complete and full statement of facts

either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified

evidence, that they have withheld evidence or otherwise acted in bad faith.'" Rothstein v.

Carriere, 373 F.3d 275, 283 (2d Cir. 2004) (quoting Colon v. City of New York, 60 N.Y.2d 78, 82-83 (1983)).

The Amended Complaint alleges that Officer Assencao and Det. Hachadoorian testified falsely, withheld exculpatory evidence, made false assertions to the prosecutors and included those fabrications in the criminal complaints; the pleading further alleges that they instructed the civilian witnesses what to say to the grand jury and intimidated and pressured those witnesses to testify falsely.  See generally Plaintiff's Opposition to Defendants' Motion (Oct. 27, 2018) ("Pl. Opp.") at 27, DE #35; infra pp. 19-20.  These non-conclusory allegations, which the Court accepts as true for purposes of this motion, are sufficient to rebut the presumption of probable cause that arose from the grand jury indictment.[10]  See Ying Li, 246 F.Supp.3d at 612 (court holds that the following allegations in the pleading were "sufficient to rebut the presumption of probable cause created by the grand jury indictment": the officer defendants "failed to obtain or disclose evidence inconsistent with plaintiff's guilt, did not document or inform the district attorney's office of exculpatory evidence, falsely reported facts in reports and search warrant affidavits, and fabricated oral statements of witnesses"); Pizarro, 2015 WL 5719678, at *6 (Matsumoto, J.); McLennon, 2015 WL 1475819, at *8 (Matsumoto, J.) (denying motion to dismiss malicious prosecution claim where the challenged pleading alleged "that the officer defendants failed to obtain or disclose evidence inconsistent with plaintiffs' guilt, did not document or inform the district attorney's office of exculpatory evidence, falsely reported facts in reports and search warrant affidavits, and fabricated oral

---

[10] In addition to plaintiff's more general assertions of witness-tampering, the Amended Complaint alleges that civilian witness Hsia "later admitted that the police had told her what to say in both the Grand Jury and at trial." Am. Compl. ¶ 135.  This specific accusation, assumed to be true on this motion, makes more plausible the pleading's other allegations regarding subornation of perjury.

statements by [one plaintiff] and other witnesses"); Smalls v. City of New York, 181

F.Supp.3d 178, 187 (E.D.N.Y. 2016).

Defendants' argument that plaintiff cannot rebut the presumption of probable cause by

referring to grand jury testimony misses the mark.  Defendants correctly observe that police

officers are entitled to absolute immunity from civil liability for testimony given before the

grand jury.  See Rehberg v. Paulk, 566 U.S. 356, 369 (2012).  Nevertheless, the absolute

immunity afforded to police officers testifying before a grand jury does not extend to "conduct

prior to and independent of [their] perjurious grand jury appearance."  Coggins v. Buonora,

776 F.3d 108, 113 (2d Cir. 2015).  Here, as with the claims addressed by Judge Matsumoto in

Pizarro, 2015 WL 5719678, at *6 n.7, and McLennon, 2015 WL 1475819, at *8 n.19, the

alleged misconduct underlying the claim of malicious prosecution goes beyond Assencao's and

Hachadoorian's grand jury testimony, and concerns supplying prosecutors with false

information, withholding exculpatory evidence and pressuring witnesses to testify falsely.  See

Ying Li, 246 F.Supp.3d at 613 (recognizing that bad faith conduct "separate and apart" from

grand jury testimony may be used to rebut the presumption of probable cause); see also

Nnodimele v. Derienzo, 13-CV-3461 (ARR)(RLM), 2016 WL 337751, at *14 (E.D.N.Y. Jan.

27, 2016) (although officers enjoyed absolute immunity for their trial testimony, plaintiff's fair

trial claim survived summary judgment where plaintiff alleged that officers fabricated evidence

and forwarded it to prosecutors).  Therefore, plaintiff need not rely on defendants' grand jury

testimony to rebut the presumption of probable cause.[11]

---

[11] Defendants further argue that the Court need not accept as true plaintiff's allegations of fabrication of
statements by the eyewitness and complaining victim, because those allegations are contradicted by documentary
evidence, such as police documents, criminal court records and trial testimony.  See Def. Mem. at 9 n.3.
However, the law is clear that the Court may not consider such documents for the truth of the statements

For the same reasons discussed above, plaintiff's allegations are sufficient to raise a plausible inference that there was no probable cause to prosecute plaintiff at the time he was indicted.  The charge of criminal trespass was necessarily predicated on Stefas' and Kharbanda's purported identification of plaintiff as the person they saw on the roof of 39-40 22nd Street.  However, the Amended Complaint alleges that neither Stefas nor Kharbanda identified plaintiff on the scene and that defendants fabricated the identification when they spoke to prosecutors.  See Am. Compl. ¶¶ 58-59.  In fact, according to the pleading, Kharbanda was unable to identify plaintiff at trial as the person he saw on the roof.  See id. ¶ 131.  To the extent that Kharbanda testified at trial that the person stopped by the police on May 27th was the same person he had seen on the roof, that testimony, plaintiff claims, was the result of pressure and intimidation by defendants.  See id. ¶ 136.  Moreover, the trial court dismissed the trespass count, with the prosecutor's consent, for lack of evidence that plaintiff was on the property without permission or authority of the property's owner.  See id. ¶ 138.

Relatedly, the only evidence cited by defendants to support the charges of criminal mischief, burglary and possession of stolen property arises from what plaintiff alleges was a fabricated identification of plaintiff as the person throwing boxes off the roof and a fabricated claim that the boxes of shoes were recovered from plaintiff.  See Def. Mem. at 11.  There was no evidence of plaintiff's entry into the warehouse, his presence in the area of the warehouse

---

contained therein.  See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Ying Li, 246 F.Supp.3d at 595, 611; *supra* pp 10-11.  Defendants' suggestion that the documents are not being offered "to establish the truth of the [witnesses'] statements" (see Defendants' Reply Memorandum in Support (Oct. 24, 2017) at 5 n.9, DE #42) is unavailing, since they are being offered to prove the disputed fact that the witnesses made the statements attributed to them in the police documents. Plaintiff's Amended Complaint alleges that the documents contain statements fabricated by defendants and witness statements obtained by defendants through coercion.  Therefore, the statements in the documents submitted by defendants do not entitle them to dismissal of plaintiff's malicious prosecution claim.

other than on May 27, 2008,[12] or his possession of the stolen generator, compressor, circular saw or other boxes of shoes.  The trial court observed that there was "'no direct evidence that plaintiff at anytime actually entered or remained in that building of Paoling Hsia with intent to commit a crime therein,' no direct evidence of when the allegedly stolen property was actually taken, 'no direct evidence of the defendant actually entering the premises or actually taking the property inside,' and 'no direct evidence that the defendant actually damaged the fence or the window' of the allegedly burglarized building."  Am. Compl. ¶ 139.  Indeed, the Appellate Division found that the evidence at trial failed to establish the necessary elements for any factfinder to believe that plaintiff committed burglary and criminal mischief.  Id. ¶ 149.[13] Assuming the truth of the allegations made by plaintiff, he has raised a plausible inference that, at the time of his indictment, there was no probable cause to prosecute him.  Therefore, this Court recommends that defendants' motion to dismiss the malicious prosecution claims against Assencao and Hachadoorian (in contrast to the other individual defendants) be denied.

## B.    Abuse of Process

Plaintiff additionally asserts a claim of abuse of process under section 1983.  "As with malicious prosecution, the Court looks to State law for the elements of a Section 1983 abuse of process claim."  Ying Li, 246 F.Supp.3d at 615.  Under New York law, an abuse of process claim "lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of

---

[12] The prosecutor conceded at trial that the burglary did not occur on May 27, 2008.  See Am. Compl. ¶ 132.

[13] In fact, the Second Department concluded that apart from the (disputed) evidence that the plaintiff herein "was in possession of some of the alleged proceeds" at the time of his arrest, "there was *no* other evidence connecting him to the burglary or the damage to the warehouse . . . ."  Is[a]ac, 121 A.D.3d at 817 (emphasis added); Am. Compl. ¶ 149.

20

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends

of the process." Savino, 331 F.3d at 76.  "'The crux of a malicious abuse of process claim is

the collateral objective element.'"  Johnson v. City of New York, No. 06-CV-630

(KAM)(ALC), 2010 WL 2771834, at *10 (E.D.N.Y. July 13, 2010) (quoting Douglas v. City

of New York, 595 F.Supp.2d 333, 344 (S.D.N.Y. 2009) (Chin, J.)).

Consequently, in order to state a section 1983 claim for abuse of process, a plaintiff

must allege that the defendant "aimed to achieve a collateral purpose beyond or in addition to

his criminal prosecution."  Savino, 331 F.3d at 77.  That is, the defendants must have acted

with an "improper *purpose*" and not just "'a malicious motive[.]'"  Id. (quoting Curiano v.

Suozzi, 63 N.Y.2d 113, 117 (1984)).  Such an improper purpose is usually characterized by

personal animus, and may include "'infliction of economic harm, extortion, blackmail [or]

retribution.'"  Folk v. City of New York, 243 F.Supp.3d 363, 375 (E.D.N.Y. 2017) (quoting

Brandon v. City of New York, 705 F.Supp.2d 261, 275 (S.D.N.Y. 2010)).

Defendants persuasively argue that the pleading fails to allege any collateral objective

on the part of defendants in connection with the issuance of legal process.  See Def. Mem. at

12.[14]  Plaintiff contends that defendants acted with an improper motive, i.e., to cover up their

false arrest, meet performance/productivity goals, and close out an open burglary complaint.

See Pl. Opp. at 21.  Such motives are, however, related to the ultimate purpose of defendants'

alleged conduct: to successfully prosecute plaintiff.  Whatever defendants' ulterior motive, the

conduct complained of - lying to prosecutors and pressuring witnesses to provide false

---

[14] Defendants also argue that the existence of probable cause is a complete defense to plaintiff's abuse of process claim.  See Def. Mem. at 12.  However, as discussed above, the Court cannot find as a matter of law that plaintiff's prosecutions were supported by probable cause.

testimony - was undertaken to secure plaintiff's conviction.  Hence, the Amended Complaint

fails to articulate the requisite collateral objective.[15]  See Hoffman v. Town of Southampton,

523 F.App'x 770, 772 (2d Cir. 2013) (attempting to coerce plaintiffs into refraining from

asserting criminal defenses is directly related to the underlying criminal prosecution rather than

collateral to it); Leibovitz, 2018 WL 1157872, at *17 (Matsumoto, J.) (granting motion to

dismiss abuse of process claim where plaintiff alleged defendants acted in retaliation for

exercising his First Amendment rights, an objective that was not unrelated to his arrest and

prosecution); Folk, 243 F.Supp.3d at 375 (granting motion to dismiss where alleged motive -

to receive credit for arrest and additional overtime - was not collateral objective unrelated to

the criminal prosecution); Jean-Laurent, 2014 WL 4662221, at *9 (attempting to meet arrest

quotas is not a collateral objective); Johnson, 2010 WL 2771834, at *10 (granting defendants'

motion for summary judgment where alleged collateral objective was "making an arrest while

doing the absolute minimum work possible").  Accordingly, this Court recommends that

plaintiff's abuse of process claim be dismissed as to all defendants.

## C.    Unreasonably Prolonged Detention

In connection with his claim for excessive detention,  "plaintiff must demonstrate '(1)

that he has a right to be free from continued detention stemming from law enforcement

officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the

officers violated that right, and (3) that the officers' conduct shocks the conscience.'"  Nzegwu

---

[15] Plaintiff argues that the absence of probable cause constitutes a sufficient basis on which to infer that defendants had a collateral objective.  See Pl. Opp. at 20-21.  However, even where probable cause does not support a plaintiff's prosecution, the failure to plead a collateral objective is fatal to an abuse of process claim.  See Folk, 243 F.Supp.3d at 375 (dismissing abuse of process claim despite plausible allegation of lack of probable cause); Coggins v. County of Nassau, 254 F.Supp.3d 500, 518-19 (E.D.N.Y. 2017) (granting defendants' summary judgment motion on abuse of process claim but finding issues of fact as to whether there was probable cause to prosecute); Burbar v. Inc. Vill. of Garden City, 961 F.Supp.2d 462, 473-74 (E.D.N.Y. 2013).

v. Friedman, 605 F.App'x 27, 32 (2d Cir. 2015) (quoting Russo v. City of Bridgeport, 479
F.3d 196, 205 (2d Cir. 2007)). In Russo, the Second Circuit reversed the lower court's grant
of summary judgment in defendants' favor on the prolonged detention claim, citing evidence
that officers suppressed available exculpatory evidence in the form of a video surveillance tape
showing that the robber did not have any tattoos, whereas the plaintiff had prominent tattoos on
his arms. See 479 F.3d at 206. After concluding that the plaintiff's arrest was supported by
probable cause based on eyewitness identification, see id. at 204, the Court of Appeals
nevertheless held that the plaintiff's prolonged detention may have been caused by the officers'
deliberate withholding of the video from the prosecutor and defense counsel, in violation of the
plaintiff's constitutional rights, see 479 F.3d at 209.

Defendants argue that plaintiff has not stated a claim for an unreasonably prolonged
detention. First, defendants argue that plaintiff fails to identify which defendants withheld or
suppressed exculpatory evidence. See Def. Mem. at 13. Second, defendants contend that
plaintiff has not identified any withheld evidence that would have conclusively established
plaintiff's innocence. See id.

With respect to defendants Assencao and Hachadoorian, defendants' assertion that the
Amended Complaint fails to distinguish among the defendants and their conduct is belied by
the pleading. The Amended Complaint alleges that Officer Assencao and Det. Hachadoorian
testified falsely, withheld exculpatory evidence, made false assertions to the prosecutors and
included those fabrications in the criminal complaints filed in court; the pleading further
alleges that these defendants instructed the civilian witnesses what to say to the grand jury and
intimidated and pressured those witnesses to testify falsely. In contrast, with respect to Officer

Messa, Det. Buell and Lt. Kenny, the pleading either fails to distinguish among defendants or makes vague and conclusory assertions as to what he or she did to pursue the investigation and plaintiff's prolonged detention.  See *supra* p. 14.  As plaintiff failed to plausibly allege the personal involvement of Messa, Kenny, and Buell in plaintiff's prolonged detention, see generally Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004), the excessive detention claim against them should be dismissed, see Ying Li, 246 F.Supp.3d at 623 (dismissing prolonged detention claims against all city defendants other than those whom the pleading plausibly alleged had taken "an active role in investigating" the plaintiffs); see also id. at 598-600.

As to the merits of the prolonged detention claim, the pleading alleges that Officer Assencao lied about the identification of plaintiff by Stefas and Kharbanda, lied about finding plaintiff in possession of the boxes of shoes, and withheld the following information: that plaintiff did not match the description given by Stefas and Kharbanda of the person that they observed on the roof, that when Assencao encountered plaintiff he was walking in the direction opposite from where the officer had been told the man on the roof was headed, and that Assencao and Kenny found no signs of forced entry or property damage when they went up to the roof.  In addition, according to the Amended Complaint, Assencao pressured the civilian witnesses to testify falsely to support his version of events.  The pleading further alleges that Det. Hachadoorian lied about Kharbanda telling him that the person stopped by Assencao and Messa was the same person he had seen on the roof and that Assencao had recovered boxes of shoes from plaintiff's person.

The above allegations, assumed to be true on this motion, are sufficient to satisfy the

requirements of an unreasonably prolonged detention claim, as they point to the absence of evidence inculpating plaintiff in the crimes charged.  See Ying Li, 246 F.Supp.3d at 623 (denying motion to dismiss prolonged detention claim, where pleading alleged that police knew there was no medical support for conclusions that were central to the case against plaintiff); Gallimore v. Feliciano, No. 14-cv-1519 (NSR)(LMS), 2015 WL 3856694, at *8 (S.D.N.Y. June 19, 2015) (denying motion to dismiss prolonged detention claim, where plaintiff sufficiently alleged the suppression of exculpatory evidence that would have established his innocence, including knowledge of probation officer that he lied in identifying plaintiff).[16]

Therefore, this Court recommends that defendants' motion to dismiss the prolonged detention claim be denied as to defendants Assencao and Hachadoorian and granted as to the other named defendants.

D.      Claims for Denial of Fair Trial and Brady Violations

Plaintiff's fifth and sixth claims allege, respectively, a denial of his right to a fair trial and Brady violations.  The Court addresses them together, because, as defendants correctly note, the two claims are closely related.  See Def. Mem. at 18 n.8.

"A police officer denies a defendant a fair trial when she creates 'false information likely to influence a jury's decision and forwards that information to prosecutors.'"  Fappiano v. City of New York, 640 F.App'x 115, 118 (2d Cir. 2016) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)).  A fair trial violation may also be based on an officer's intentional withholding of exculpatory evidence, which is essentially a fair trial claim sounding in a Brady violation.  See id.; see also Ying Li, 246 F.Supp.3d at 626-28.

---

[16] Notably, on appeal from his conviction, the Appellate Division concluded that the *only* proof linking plaintiff to the most serious of the charges – burglary – was the (disputed) evidence that plaintiff was in possession of some of the alleged proceeds at the time of his arrest.  See *supra* p. 20 n.13.

Defendants argue that plaintiff's allegations of fabricated evidence and withheld exculpatory evidence are either implausible or too speculative.  See Def. Mem. at 15.  On the contrary, plaintiff specifically identifies the evidence that was allegedly fabricated and provides sufficient facts from which to infer how that evidence was relied on to convict him.  For example, the Amended Complaint alleges that defendants pressured Hsia to falsely testify that on May 29, 2008, she observed for the first time that the fence on the roof of 39-40 22nd Street was dislodged, and that it had been undamaged one week earlier, when she had last seen it.  See Am. Compl. ¶ 135.  The pleading further alleges that defendants coerced Kharbanda to falsely testify that he pointed out to the police the person he had seen on the roof.  See id. ¶ 136.  According to the Amended Complaint, Officer Assencao falsely reported to prosecutors, and included in his reports and the sworn complaint, that Kharbanda identified plaintiff as the person Kharbanda had seen on the roof, that plaintiff was pushing a shopping cart when the officers stopped him, that he personally observed plaintiff carrying two boxes of women's shoes, and that plaintiff was the only person on the street when he was stopped.  See id. ¶¶ 56-60, 65-66.   Similarly, Hachadoorian is alleged to have falsely stated in his investigation reports and the second criminal complaint that Kharbanda told him that the person stopped by the police on March 27, 2008 was the same person that he had seen on the roof. See id. ¶¶ 80, 87, 91. [17]

Accepting plaintiff's allegations as true and drawing all reasonable inferences in his favor, this Court concludes that the Amended Complaint, which specifically identifies the evidence that Assencao and Hachadoorian allegedly fabricated and transmitted to the

---

[17] Plaintiff states a section 1983 claim for deprivation of a fair trial without reference to grand jury or trial testimony, for which defendants are entitled to absolute immunity.  See Coggins, 776 F.3d at 113.

prosecutors, adequately alleges a fair trial claim against those defendants.  See Hicks v.

Marchman, 719 F.App'x 61, 63-64 (2d Cir. 2018) (vacating dismissal of fair trial claim,

where allegations were sufficient to raise a plausible inference that the officers fabricated

evidence and forwarded that information to prosecutors); Benitez, 2018 WL 2973387, at *3

(denying motion to dismiss fair trial claim where allegedly fabricated evidence, though not

admitted at trial, was given to prosecutors and used to prosecute plaintiff); Ying Li, 246

F.Supp.3d at 627-29 (plaintiff sufficiently pled claim  for Brady violations and fabrication of

evidence against officers who allegedly falsely reported facts in reports and search warrant

affidavits); Case v. City of New York, 233 F.Supp.3d 372, 388-89, 399 (S.D.N.Y. 2017)

(allegations that subordinate officers' sworn affidavits contained false statements that formed

the basis for the ADA's decision to prosecute sufficed to state false trial claim); Marom v. City

of New York, 15-cv-2017 (PKC), 2016 WL 5900217, at *2 (E.D.N.Y. July 29, 2016) (on

reconsideration, denying motion to dismiss fair trial claim where plaintiff alleged with

sufficient specificity what was false about police reports and accusatory instruments); see also

Struthers v. City of New York, No. 12-CV-242, 2013 WL 2390721, at *13 (E.D.N.Y. May

31, 2013) (denying defendants' motion for summary judgment where plaintiff alleged that

officer fabricated victim's identification of plaintiff as the assailant).[18]

---

[18] Defendants cite Mitchell v. Kugler, No. 07 CV 1801(JG)(LB), 2009 WL 160798 (E.D.N.Y. Jan. 23, 2009),
for the proposition that plaintiff's "conclusory allegation of witness coercion" should not be accepted as true for
purposes of the instant motion.  See Def. Motion at 15-16.  Yet in Mitchell, the court denied the defendants'
motion for judgment on the pleadings, see id. at *8, where the pleading "appeared to support a claim that the law
enforcement authorities had cajoled a witness who had described someone else as the perpetrator to identify [the
plaintiff] instead," id. at *10.  In fact, the court observed that "it is difficult to imagine what" more plaintiff could
have alleged to render his claim plausible.  See id. at *8.  Defendants appear to be relying on dictum in Mitchell
concerning the court's review of extra-pleading materials - i.e., the grand jury transcripts and transcripts of
plaintiff's two criminal trials – and its skepticism that the plaintiff's claims would survive a motion for summary
judgment.  See id. at *10.  This Court is now faced with a Rule 12(c) motion and declines to speculate about the
(footnote cont'd)

For the same reasons, plaintiff's allegations are adequate to state a Brady violation

claim, against Assencao and Hachadoorian.  See Ying Li, 246 F.Supp.3d at 627.  The

Amended Complaint, as discussed above, alleges that Officer Assencao withheld exculpatory

information by giving false information to prosecutors as to plaintiff's identification and

coercing Kharbanda into providing corroborating testimony.  For his part, Det. Hachadoorian

is alleged to have withheld exculpatory information by falsely stating in his reports and the

criminal complaint that Kharbanda told him that the person stopped by officers on March 27,

2008 was the same person that he had seen on the roof.  Contrary to defendants' argument that

the only plausible allegation of fabricated evidence was the claim that plaintiff was pushing a

shopping cart at the time he was stopped, see Def. Mem. at 17 & n.6, the allegations discussed

above are sufficiently specific and are material to the determination of plaintiff's guilt.[19]

On the other hand, defendants correctly argue that plaintiff has not stated a claim

against supervisory defendants Kenny and Buell for forwarding fabricated evidence to the

---

outcome of the instant case at trial, or on summary judgment, based on a full record.

Betts v. Shearman, 751 F.3d 78 (2d Cir. 2014), relied on by defendants, is likewise distinguishable.  As
defendants acknowledge, there, the Second Circuit found it implausible that the complaining victim was coached
into accusing her husband of assault since she had reported the assault to the 911 operator prior to having any
contact with the defendants.  See id. at 84.  In contrast, here, defendants are alleged to have lied about the
eyewitnesses' identification of plaintiff as the perpetrator at the scene and to have coerced them into subsequently
corroborating the purported identification.  In his call to the 911 operator, Stefas did not specifically identify
plaintiff or provide a description that matched him.  See Am. Compl. ¶ 46.  With respect to Hsia, the pleading
alleges that she did not originally tell Det. Hachadoorian that the fence on the roof of 39-40 22nd Street had been
undamaged when she last left the building on May 23, 2008.  See id. ¶¶ 72, 90.  Nevertheless, Hachadoorian
included that allegedly false statement in the criminal complaint.

[19] The Amended Complaint also asserts that defendants failed to preserve and produce to plaintiff "the recordings
of the 911 calls and all related radio transmissions," as well as the records created by the ESU officers in
connection with their investigation of the rooftops on May 27, 2008.  See Am. Compl. ¶¶ 82-83, 128-30.  These
allegations, without more, are insufficient to support a Brady claim.  See Leibovitz, 2018 WL 1157872, at *17
(dismissing similar Brady claim where the complaint was "devoid of any allegations that would support a
conclusion that any of the individual defendants (as opposed to the Queens County District Attorney's Office) was
obligated to turn over Brady material to plaintiff and impermissibly failed to do so, or otherwise interfered with
his right to receive such materials").

prosecutors.  Plaintiff alleges that those defendants knew that false information was being included in the criminal complaints but approved of their inclusion.  <u>See</u> Am. Compl. ¶¶ 67, 93-94.  However, more is required for individual liability based on direct participation.[20] "Unlike its allegations as to the subordinate officers, . . . the [amended] complaint does not supply any factual detail indicating the nature of the purportedly false information provided by the supervisors."  <u>Case</u>, 233 F.Supp.3d at 399 (holding that allegations that supervisors were responsible for ensuring accuracy of processing arrest paperwork were insufficient to sustain personal involvement in fair trial claim); <u>see</u> <u>Bertuglia v. City of New York</u>, 839 F.Supp.2d 703, 724 (S.D.N.Y. 2012) (dismissing fair trial claim against supervisory defendants, but not "primary" defendants, where plaintiffs failed to plead that the supervisors "made any such false statements, or took such *specific* action or inaction as to make them liable for those false statements") (emphasis added); <u>see also</u> <u>Jean-Laurent</u>, 2014 WL 4662221, at *6, *12-13 (recommending dismissal, on summary judgment, of malicious prosecution and fabrication of evidence claims against three police officers who were respectively alleged to have "participated in plaintiff's arrest," "assisted in plaintiff's arrest and completed the online arrest worksheet," and "authorized, approved and/or participated, in plaintiff's prosecution," as none "played an active role in plaintiff's prosecution").

Defendants Kenny and Buell are not alleged to have been personally involved in preparing either criminal complaint or in forwarding any of the alleged fabrications to prosecutors.  Plaintiff's assertions that each of the two supervisors approved the complaint prepared by his subordinate, "knowing full well that its contents were false and would lead to

---

[20] "The liability of a supervisor in a section 1983 action "depends upon a showing of some personal responsibility, and cannot rest on *respondeat superior*."  <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003).

the arraignment and prosecution of plaintiff[,]" Am. Compl. ¶ 67; see id. ¶¶ 93-94, are

nothing more than formulaic recitations of the elements of a cause of action based on

fabrication of evidence, see generally Iqbal, 556 U. S. at 678, and, as such, are too conclusory

to survive a motion to dismiss.[21]  See, e.g., Ying Li, 246 F.Supp.3d at 629 n.48 ("[B]ecause

the Amended Complaint does not allege direct involvement by all Defendants in the

investigation of Plaintiff's case, the group pleadings are insufficient in themselves to state a

fabrication of evidence claim as to those City Defendants as to whom there are no specific

allegations of involvement."); John v. Lewis, 15-CV-5346 (PKC), 2017 WL 1208428, at *18

(E.D.N.Y. Mar. 31, 2017) (dismissing claim as against one of two defendants, where the

allegations against him consisted of "conclusory recitations of the elements of a fabrication of

evidence claim"); see also Ganek v. Leibowitz, 874 F.3d 73, 92-93 (2d Cir. 2015) (rejecting

as implausible allegation that supervisors knew that statement in affidavit was false where

plaintiff did not deny that supervisors routinely rely on subordinates to accurately report the

statements made to them by witnesses); cf. Iqbal, 556 U.S. at 680-81 (concluding that

allegation that department head was "principal architect" of challenged policy was too

conclusory to support claim against him based on how subordinates effected policy); Abdul-

Rahman v. City of New York, No. 10 Civ. 2778, 2012 WL 1077762, at *12 (E.D.N.Y. Mar.

20, 2012) (dismissing fair trial claim where plaintiff "presented only the most conclusory and

generalized allegations").

---

[21] With one exception, the pleading does not even identify the subordinate's statements that Kenny and Buell allegedly knew to be false.  The one exception is the allegation that after plaintiff was detained on May 27, 2008, Kenny arrived on the scene and "observed that plaintiff did not match the description that he had heard relayed by the 911 dispatcher over the police radio, and that plaintiff did not match the description that Stefas and Kharbanda gave to Kenny in person."  Am. Compl. ¶ 50.  The Amended Complaint does not explain how plaintiff's appearance differed from the aforesaid descriptions.  While the vagueness of this assertion, in combination with additional, more particularized falsehoods, is not fatal to the various claims against Assencao, it constitutes too slim a reed on which to support a claim against Kenny for violating plaintiff's right to a fair trial.

The allegations against Officer Messa present a closer question.  Like Officer Assencao, she was present when Stefas and Kharbanda first reported their observations and when plaintiff was detained on the basis of that information.  See Am. Compl. ¶¶ 43-48.  But the sole reference in the pleading to any action taken by Messa thereafter to pursue the prosecution of plaintiff is the perfunctory assertion that the information in the first criminal complaint came from Assencao, the deponent thereof, "and Officer Messa." Id. ¶ 65.  All of the pleading's allegations concerning specific acts taken to procure plaintiff's conviction are attributed to Assencao, who spoke with ADA Giordano on May 28, 2008, see id. ¶¶ 55-58, and "[t]hroughout plaintiff's prosecution," see id. ¶¶ 60-62, and who falsely testified before the grand jury and at trial, see id. ¶¶ 101-111, 137.  Absent some factual basis underlying plaintiff's conclusory assertion that Messa actively pursued plaintiff's conviction, the pleading's vague assertion that she contributed to the allegations in the first criminal complaint should not defeat a motion to dismiss the fair trial/Brady claims against her.  See, e.g., Smalls, 181 F.Supp.3d at 185 (fabrication of evidence claim "fails to identify what, if any, fabricated evidence was offered" by four of the defendant officers); Jean Laurent, 2014 WL 466221, at *6, *12-13.

Accordingly, the fair trial and Brady claims should be dismissed as to all defendants other than P.O. Assencao and Det. Hachadoorian.

### E.   Failure to Intervene

The Amended Complaint charges, in the alternative, that each individual defendant failed to intervene to prevent each of the constitutional violations discussed above.  As an initial matter, while defendants correctly argue that the individual defendants cannot be liable

31

for both the underlying constitutional deprivation and a failure to intervene to stop themselves from committing that violation, see Def. Mem. at 19-20, a plaintiff may plead direct participation and failure to intervene in the alternative, see Lanorith v. Truscelli, 15-CV-617 (NGG) (LB), 2017 WL 3634600, at *13 (E.D.N.Y. Aug. 22, 2017) (collecting cases).

"'It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'" Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). To support a claim for failure to intervene, and to "overcome the hurdle of qualified immunity[,]" a plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Ricciuti, 124 F.3d at 129. In addition, a plaintiff must show that the officer had "'a realistic opportunity to intervene to prevent the harm from occurring' but failed to do so." Ying Li, 246 F.Supp.3d at 619 (quoting Cerbelli v. City of New York, No. 99-CV-6846, 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008)). "The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." Figueroa v. Mazza, 825 F.3d 89, 107–08 (2d Cir. 2016).

Here, the Amended Complaint's allegations regarding Lt. Buell are entirely too conclusory to state a claim for failure to intervene. The pleading vaguely asserts that Buell reviewed the second criminal complaint and knew that it contained "several material

allegations [that] were fabricated and false," Am. Compl. ¶ 94, and knew of "Hachadoorian's

propensity for falsifying evidence," id. ¶ 95.  Plaintiff fails to identify which allegations Buell

knew to be false or how he became aware they were fabricated; nor does he provide any

factual basis for Hachadoorian's alleged propensity for falsifying evidence and/or Buell's

purported awareness of that propensity.  Simply put, the allegations against Buell "lack[ ] the

specificity required to withstand a motion to dismiss."  Hardy v. City of New York,

No. 12 Civ. 17(RJS), 2013 WL 5231459, at *4 (S.D.N.Y. July 9, 2013) (dismissing failure

to intervene claim where the pleading "fails to explain whether any of [the officers] was in

another's presence at the time of the submission of false evidence"); see Clay v. County of

Clinton, No. 8:10-CV-00239 (LEK/RFT), 2012 WL 4485952, at *14 (N.D.N.Y. Sept. 27,

2012) ("vague and conclusory allegations" with respect to three defendants did not suffice to

"plausibly suggest their liability" for failure to intervene); Bouche v. City of Mount Vernon,

No. 11 Civ. 5246(SAS), 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (dismissing

"vague and conclusory" failure to intervene claim).

    Defendants Messa and Kenny stand on a different footing.  To be sure, the allegations

against them are similarly conclusory, and the above-cited caselaw would seem to support

dismissal of the failure to intervene claim against them as well.  On the other hand, they were

on the scene for all or part of the encounter with plaintiff on May 27, 2008, and, to the extent

that evidence was fabricated concerning what transpired at that time, they would have known

of its falsity and were in a position to take corrective action.  Thus, had plaintiff asserted a

false arrest claim, defendants would be hard pressed to argue that those two defendants could

not plausibly have intervened to prevent plaintiff's arrest.  See Arbuckle v. City of New York,

14 Civ. 10248 (ER), 2016 WL 5793741, at *15 (S.D.N.Y. Sept. 30, 2016) (finding that plaintiffs plausibly alleged that supervisor on the scene who witnessed circumstances leading to arrest had realistic opportunity to prevent false arrest).  Whether Messa and Kenny had a realistic opportunity to prevent a malicious prosecution of plaintiff – or his prolonged detention, or the deprivation of his right to a fair trial - is a more complex, highly fact-based question.  Suffice it to say, other courts in this Circuit have refused to dismiss similar failure to intervene claims against officers who were present at the scene of the crime and/or at the time of the plaintiff's arrest.  See, e.g., Jeanty v. City of Utica, No. 6:16-cv-00966 (BKS/TWD), 2017 WL 6408878, at *8-9 (N.D.N.Y Aug. 18, 2017), on partial reconsideration, 2018 WL 2383582 (N.D.N.Y May 25, 2018); Marom, 2016 WL 5900217, at *4; see also Coggins v. County of Nassau, 988 F.Supp.2d 231, 244-45 (E.D.N.Y. 2013), aff'd in part, appeal dismissed in part subnom. Coggins v. Buonora, 776 F.3d 108 (2d Cir. 2015).  Therefore, drawing all reasonable inferences in plaintiff's favor, this Court concludes that the failure to intervene claim against Messa and Kenny should not be dismissed; whether plaintiff will be able to prove that claim remains to be seen.

In short, this Court recommends that defendants' motion to dismiss plaintiff's failure to intervene claim be granted only as to defendant Buell.

### F.    John Doe Defendants

As discussed above, personal involvement of defendants is a prerequisite to liability under section 1983.  Here, the Amended Complaint fails to allege any facts regarding the John Doe police officers' conduct.  Absent any allegations that would suggest that they were personally involved in the alleged constitutional deprivations at issue, the claims against them

should be dismissed.  See Pizarro, 2015 WL 5719678, at *5 n.5, *7 n.10 (dismissing

malicious prosecution and Fifth Amendment claims against John Doe officers); Levantino v.

Skala, 56 F.Supp.3d 191, 207  (E.D.N.Y. 2014) (denying as futile cross-motion to amend to

add John Doe defendant); Melendez v. Nassau Cty., No. 10-CV-2516 SJF WDW, 2010 WL

3748743, at *5 (E.D.N.Y. Sept. 17, 2010) (dismissing unidentified officers where complaint

did not provide factual basis for their involvement).  Therefore, this Court recommends

dismissing the claims against "John Does 1-10."

### G.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity for plaintiff's claims for

malicious prosecution, excessive detention, denial of a fair trial and failure to intervene.  See

Def. Mem. at 21-22.

"Qualified immunity shields law enforcement officers from § 1983 claims for money

damages provided that their conduct does not violate clearly established constitutional rights of

which a reasonable person would have been aware."  Barboza v. D'Agata, 676 F.App'x 9, 12

(2d Cir. 2017).  In analyzing the applicability of qualified immunity, courts conduct a two-step

analysis: "First, do the facts show that the officer's conduct violated plaintiff's constitutional

rights?  Second, if there was a constitutional violation, was the right clearly established at the

time of the officer's actions?"  Id.  "[E]ven if the right at issue was clearly established[,] . . .

an officer is still entitled to qualified immunity if 'officers of reasonable competence could

disagree' on the legality of the action at issue in its particular factual context."  Id. (quoting

Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007)) (alterations omitted).

Defendants contend that they are entitled to qualified immunity for malicious

prosecution, prolonged detention and failure to intervene because they reasonably relied on "eyewitness and complaining victim reports." See Def. Mem. at 21. However, defendants again ignore the gravamen of plaintiff's Amended Complaint, which alleges that: the eyewitnesses did not see plaintiff throw boxes of shoes off the roof or identify plaintiff as the person they had seen on the roof, that plaintiff was not in the vicinity of where the eyewitnesses had said the person on the roof had fled; and that the description given to defendants of the person on the roof did not match plaintiff. As to the burglary, plaintiff alleges that Hsia did not observe that the fence separating her warehouse from 39-40 22nd Street had been undamaged prior to her trip. Moreover, the Appellate Division found that there was no evidence from which a reasonable trier of fact could conclude that plaintiff committed burglary or criminal mischief. See Is[a]ac, 121 A.D.3d at 817. At this stage of the litigation, faced with allegations that defendants deliberately fabricated evidence, pressured witnesses to lie and suppressed exculpatory evidence, they are not entitled to dismissal of the claims for malicious prosecution, prolonged detention, denial of a fair trial and failure to intervene based on qualified immunity. See, e.g., Coggins, 776 F.3d at 114 (affirming denial of motion to dismiss based on qualified immunity for falsification of evidence); Ying Li, 246 F.Supp.3d at 641-42; Shabazz v. Kailer, 201 F.Supp.3d 386, 399 (S.D.N.Y. 2016); see also Ricciuti, 124 F.3d at 130 (reversing grant of summary judgment on qualified immunity grounds with respect to fabrication of evidence claim).

H.   **Monell Claim**

Defendants argue that plaintiff's Monell claim is insufficiently pled. See Def. Mem. at 22-25. Plaintiff counters that he has adequately alleged that the City maintains a custom of

36

"arresting innocent persons in order to meet 'performance/productivity goals' (i.e., arrest quotas)" and fabricating evidence to conceal the illegitimacy of those arrests.  See Pl. Opp. at 33.  In addition, plaintiff argues that he adequately alleges Monell liability based on a theory of the City's failure to train or supervise officers about perjury and falsification of evidence.  See id. at 33-34.

As with any defendant in a section 1983 claim, a municipality is liable only for its own involvement in a civil rights violation.  See Connick v. Thompson, 563 U.S. 51, 60 (2011) (noting that municipalities are not "vicariously liable under § 1983 for their employees' actions").  Accordingly, a plaintiff must allege a municipal policy, custom, or practice that caused the claimed civil rights violation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692-94 (1978).  This causal link must be sufficiently strong such that the municipal policy, custom, or practice can be considered a "moving force" behind the municipal employee's alleged misconduct.  See id. at 694.

A municipal policy, custom, or practice may be shown with evidence of either (1) a formal, express policy, see id. at 690; (2) a practice of similar constitutional violations that is so widespread and persistent as to constitute a custom or usage of the state (or municipality), see Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970); (3) a decision to follow a particular course of action made by the official or officials responsible for establishing final policy with respect to the subject matter in question, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); or (4) a failure to properly train municipal employees, amounting to deliberate indifference to the rights of persons with whom the police came in contact, see City of Canton v. Harris, 489 U.S. 378, 387-88 (1989).  "[T]o survive a motion to dismiss, a

plaintiff must allege 'sufficient factual detail' and not mere 'boilerplate allegations' that the violation of the plaintiff's constitutional rights resulted from the municipality's custom or official policy." Ying Li, 246 F.Supp.3d at 636 (quoting Plair v. City of New York, 789 F.Supp.2d 459, 469 (S.D.N.Y. 2011)); see Matthews v. City of New York, 889 F.Supp.2d 418, 444 (E.D.N.Y. 2012).

As noted above, plaintiff relies on only two of the above theories: a widespread custom or practice and a failure to train and supervise. His pleading does not sufficiently plead either one.

### 1. Widespread Custom and Practice

To support a custom-and-usage theory of municipal liability, plaintiff must plausibly allege that he has suffered a constitutional violation and that the violation was caused by a custom or policy of the City. See Monell, 436 U.S. at 690. A complaint's "mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), overruled on other grounds, Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163 (1993). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012).

Here, plaintiff claims that the City has a custom of arresting innocent people and fabricating evidence to satisfy arrest quotas. See Am. Compl. ¶ 191. Such boilerplate assertions are insufficient to sustain a Monell claim, see Pizarro, 2015 WL 5719678, at *9;

Matthews, 889 F.Supp.2d at 444, and must be disregarded, see Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *14 (S.D.N.Y. Mar. 26, 2015). Nor does plaintiff's citation to several cases in state and federal court support the existence of such "de facto" policies. See Am. Compl. ¶ 201; see also id. ¶ 188. Plaintiff alleges no facts regarding those cases, and upon inspection, none involved police officers providing prosecutors with false information or coercing witnesses into providing false testimony. Hence, they "do not support [plaintiff's] allegations of a policy or custom" of engaging in the conduct complained of. See Gaston v. Ruiz, No. 17-CV-1252 (NGG) (CLP), 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018) (dismissing Monell claim, as citations to factually dissimilar cases did not demonstrate the requisite municipal policy or custom).

Equally unavailing is plaintiff's reliance on the Mollen Commission Report, and other pronouncements from years ago. "Research reports may be used to bolster Monell claims, but only if those reports are sufficiently connected to the specific facts of the case" and are of relatively recent vintage. See Gomez v. City of New York, No. 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at *11 (E.D.N.Y. Mar. 16, 2017) (plaintiff's reliance on 13-year old bar association report regarding civil actions alleging police misconduct was insufficient to defeat summary judgment). The pleading in this case fails to make that connection. See Aguirre v. City of New York, 15-CV-6043 (PKC), 2017 WL 4236552, at *6 (E.D.N.Y. Sept. 22, 2017) ("As other courts in this Circuit have found in similar Section 1983 actions, Plaintiff's reliance on reports and articles regarding misconduct by NYPD officers are inadequate to allege a policy or custom of the City, let alone allege that that policy or custom is the one that gave rise to *Plaintiff's* alleged violation.") (citations omitted; granting motion for judgment on the

pleadings as to Monell claim); see also Yanez v. City of New York, 29 F.Supp.2d 100, 112 &
n.6 (E.D.N.Y. 1998) (granting summary judgment dismissing plaintiff's Monell claims, where
"plaintiff has not adequately explained the connection between the alleged plot among these
police officers and the 'blue wall of silence' described in the Mollen report[,]" which was
issued in 1994 and "would probably be inadmissible evidence").

Plaintiff also contends that his Monell claim "draws on the fact that the named
defendants have been repeatedly sued for police misconduct." Pl. Opp. at 34 (citing Am.
Compl. ¶ 201). Several of the cases cited by plaintiff, however, do not involve any of the
individual defendants. See Smith v. City of New York, Index No. 700464/2014 (Sup. Ct.
Queens Co.); Valeri v. City of New York, 13-cv-01259 (BMC) (E.D.N.Y.); Floyd v. City of
New York, Index No. 7012/1995 (Sup. Ct. Queens Co.). Even if those few cases involving a
named defendant had involved similar facts,[22] they do not support a claim for municipal
liability, as they either were resolved by settlement or the City prevailed.[23] Contrary to the
premise of plaintiff's argument, unproven allegations in a handful of cases -- whether involving
these defendants or other officers—do not plausibly allege the existence of an unconstitutional
policy, sufficient to defeat a motion to dismiss a Monell claim. See Harris v. City of
Newburgh, No. 16-CV-2731 (KMK), 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 27, 2017);
An v. City of New York, 230 F.Supp.3d 224, 229-30 (S.D.N.Y. 2017) ("But the Complaint
fails to allege that any of the six lawsuits, which were filed over the course of four years,

---

[22] But see, e.g., Taant v. City of New York, Index No. 709517/2015 (Sup. Ct. Queens Co.) (charging Assencao with accidentally hitting a bicyclist with his patrol car).

[23] For example, in Roche v. Buell, 04-cv-00293 (NGG)(MDG) (E.D.N.Y.), a case from 2004 involving an alleged police stop because of race, the case was settled with an offer of judgment pursuant to Rule 68 of the Federal Rules or Civil Procedure.

resulted in a finding that the NYPD officers" committed violations similar to those at issue in that case); Calderon v. City of New York, 138 F.Supp.3d 593, 613 (S.D.N.Y. 2015) ("None of the [16] lawsuits cited resulted in an adjudication of liability and the number of suits does not suggest a pervasive legal practice."), on partial reconsideration, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015); Tieman, 2015 WL 1379652, at *17 ("[E]ven if the [nine] civil complaints involved comparable conduct to that alleged here, none resulted in an adjudication of liability.") (internal quotation marks and alteration omitted); see also Jean-Laurent v. Wilkerson, 461 F.App'x 18, 22-23 (2d Cir. 2012) (rejecting plaintiff's reliance on the existence of similar lawsuits and affirming summary judgment dismissing Monell claim); Vasquez v. City of New York, No. 11-CV-3024 (SLT)(VVP), 2013 WL 5519981, at *11 (E.D.N.Y. Sept. 30, 2013) (granting summary judgment dismissing Monell claim and holding that evidence of five prior CCRB complaints of excessive force and two settled lawsuits against the defendant officer was insufficient to defeat summary judgment because, in part, such "allegations were not sustained").

### 2. Failure to Train/Supervise

Plaintiff also asserts a failure-to-train theory of municipal liability, which requires an act, a mental state, and causation. See City of Canton, 489 U.S. at 388-92. To support a Monell claim under this theory, plaintiff must show that the municipality failed to adequately train its employees, and that such inadequate training was the product of the municipality's deliberate indifference. See id. In addition, plaintiff must "identify a specific deficiency in the city's training program and establish that [the] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of

W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting City of Canton, 489 U.S. at 391).

Further, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 563 U.S. at 61 (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 822–23 (1985)).  A plaintiff must allege facts tending to show a pattern of similar constitutional violations by police officers that went unaddressed by the City. See id. at 62; see also Tuttle, 471 U.S. at 821-24 (holding that it was reversible error to allow jury to infer an implicit municipal policy of inadequate training, and thus to find municipal liability, based on a single incident of unjustified police shooting).  Even at the pleading stage, some "non-conclusory allegation as to deficient training programs is necessary . . . . " Calderon, 138 F.Supp.3d at 614 (collecting cases).

Citing the findings of the Mollen Commission and various statements and reports issued by the City, plaintiff argues that his allegations of the City's failure to train or supervise its officers about police perjury and falsification of evidence are well founded.  See Am. Compl. ¶ 193; Pl. Opp. at 33-34.  However, several courts have rejected the use of such reports to support Monell claims where, as here, the plaintiff failed to connect his claims to the practices described in these reports.  See, e.g., Aguirre, 2017 WL 4236552, at *8 (granting motion for judgment on the pleadings dismissing Monell claim); see also Granato v. City of New York, No. 98-CV-667 (ILG), 1999 WL 1129611, at *9 n.18 (E.D.N.Y. Oct. 18, 1999) (granting summary judgment dismissing plaintiff's Monell claim where, "in the absence of specific allegations showing some resemblance between the corrupt practices detailed in the Mollen Commission report and the circumstances of this case, neither the report, nor vague allusions to the 'blue wall' suffice to create a genuine issue of material fact").  And where the complaint

42

relies on prior allegations of misconduct by the defendant officers to support a theory of failure to supervise or train, the pleading must offer specific facts regarding whether the City investigated or disciplined the officers; as plaintiff's pleading fails to do so, it does not adequately allege a Monell claim for failure to supervise or train. See Walker v. City of New York, No. 14-CV-808(ER), 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015); Tieman, 2015 WL 1379652, at *21.

In any event, plaintiff has failed to allege any "specific deficiency in the city's training program." Amnesty Am., 361 F.3d at 129; see Pizarro, 2015 WL 5719678, at *9-10, or any facts that the City's deliberate indifference and failure to train were the "moving force" behind plaintiff's constitutional injuries, see Aguirre, 2017 WL 4236552, at *8. In fact, plaintiff has not pled any specific allegations regarding the City's training, discipline or supervision programs.

Therefore, this Court recommends granting defendants' motion to dismiss plaintiff's Monell claim against the City.[24]

_____

[24] Defendants argue in a footnote that plaintiff's eighth count, charging Buell and Kenny with supervisory liability for failure to train and/or supervise the other individual defendants and deliberate indifference to their misconduct, see Am. Compl. ¶¶ 211-215, is subject to dismissal for the same reasons as is his Monell claim, see Def. Mem. at 25 n.12; see generally Hernandez, 341 F.3d at 144 (holding that supervisory liability under section 1983 requires "some personal involvement" or "responsibility," and outlining different methods by which a plaintiff may establish supervisory liability). Plaintiff does not separately address defendants' challenge to the eighth count, thereby abandoning that claim. See Raffaele v. City of New York, 242 F.Supp.3d 152, 159 (E.D.N.Y. 2017) (Matsumoto, J.).

In any event, this Court agrees with defendants that the pleading's failure to allege any specific training deficiencies applies with equal force to plaintiff's claim for supervisory liability. As for the alleged failure to supervise, the Amended Complaint contains only conclusory assertions for holding Buell accountable for Hachadoorian's alleged misconduct, see, e.g., supra pp. 14, 29-30, and, for this additional reason, Buell would be entitled to the dismissal of that claim even if it had not been abandoned.

Kenny, in contrast, is alleged to have come on the scene after plaintiff was first detained by Kenny's subordinates and, for that reason, this Court has recommended denying defendants' motion to dismiss the failure to intervene claim against Kenny. See supra pp. 33-34. While that claim should stand, the boilerplate allegations in the eighth count, which charge Buell and Kenny, in identical language, with "[a]llowing innocent persons to be

III.   <u>**State Constitutional Claims**</u>

Plaintiff alleges that by "engag[ing] in a deliberate and unjustified effort to manufacture guilt against plaintiff" and thus secure "an unjust conviction[,]" defendants deprived him of his right to due process and to be free from unreasonable seizures, in violation of sections 6 and 12 of Article I of the New York State Constitution.  Am. Compl. ¶¶ 217, 220-21.  The pleading further asserts that the City is liable for the damage caused by its employees "under the doctrine of <u>respondeat</u> <u>superior</u>."  <u>Id</u>. ¶ 223.

In response to plaintiff's state constitutional claims, defendants correctly contend that "there is no private right of action under the New York State Constitution for claims that are remediable under Section 1983 or other state laws."  Def. Mem. at 25 (quoting <u>Maldonado v. City of New York</u>, No. 11 Civ. 3514(RA), 2014 WL 787814, at *12 (S.D.N.Y. Feb. 26, 2014)).  Because plaintiff's state constitutional claims are based on the same conduct as those he asserts under section 1983, this Court recommends dismissal of his state constitutional claims against the individual defendants.  <u>See</u> <u>Allen v. Antal</u>, 665 F.App'x 9, 13-14 (2d Cir. 2016) ("Because alternative remedies were available under § 1983 and common law here, . . . the district court properly dismissed Allen's [New York] state constitutional claims.").

As for plaintiff's state constitutional claims against the City, plaintiff suggests that section 1983 does not provide an adequate remedy because, unlike state law, section 1983 does not recognize municipal liability under a theory of *respondeat superior*.  <u>See</u> Pl. Opp. at 35; <u>see also</u> <u>Leibovitz</u>, 2018 WL 1157872, at *24.  Even assuming *arguendo* that section 1983 therefore fails to provide an adequate alternative remedy for state constitutional claims against

---

arrested or prosecuted" in order to meet arrest quotas, and with "[e]ncouraging and/or failing to discipline officers for 'testifying' and/or fabricating false evidence," <u>see</u> Am. Compl. ¶214, are insufficient to state a plausible claim of supervisory liability, <u>see</u> <u>Pizarro</u>, 2015 WL 5719678, at *8.

the City,[25] this does not end the inquiry: there likewise is no separate right of action under the

New York State Constitution where state *common law* provides an alternative means of

redress.  See Allen, 665 F.App'x at 13.

Where, as here, a plaintiff claims to have been subjected to a "bad-faith prosecution,"

New York common law provides a variety of remedies that preclude analogous tort claims

under the state constitution.  See Newton v. City of New York, 566 F.Supp.2d 256, 282

(S.D.N.Y. 2008).  Indeed, courts in this Circuit have repeatedly dismissed similar state

constitutional claims, concluding that New York common law provides alternative means of

redress via claims for malicious prosecution, see Bleiwas v. City of New York, No. 15 CIV.

10046 (ER), 2017 WL 3524679, at *11 (S.D.N.Y. Aug. 15, 2017), on partial reconsideration,

2018 WL 401321 (S.D.N.Y. Jan. 11, 2018); Allen v. Antal, No. 12 Civ. 8024(NSR), 2014

WL 2526977, at *11 (S.D.N.Y. Mar. 13, 2014), aff'd, 665 F.Appp'x 9 (2d Cir. 2016);

Maldonado, 2014 WL 787814, at *12 & n.10; Struthers, 2013 WL 2390721, at *9 n.15; false

imprisonment, see Allen, 2014 WL 2526977, at *11; Maldonado, 2014 WL 787814, at *12 &

n.10; Biswas v. City of New York, 973 F.Supp.2d 504, 522 (S.D.N.Y. 2013), appeal

dismissed, 576 F.App'x 58 (2d Cir. 2014); and abuse of process, see Allen, 2014 WL

2526977, at *11.[26]  Plaintiff thus has no viable state constitutional claim against any of the

---

[25] The case law in this Circuit is split on the issue of whether section 1983 provides an adequate alternative remedy for state constitutional claims predicated on a theory of *respondeat superior*.  See, e.g., Alwan v. City of New York, 14-cv-4556 (NGG)(VMS), --F.Supp.3d--, 2018 WL 2048366, at *11 (E.D.N.Y. May 2, 2018) (citing cases on both sides of the issue).

[26] Citing the New York State Court of Appeals' decision in Brown v. State, 89 N.Y. 2d 172 (1996), plaintiff argues in a footnote that "a common law claim for malicious prosecution is not an acceptable alternative remedy for a state constitutional claim . . . ."  Pl. Opp. at 34 n.21.  But the Court of Appeals subsequently emphasized, in Martinez v. City of Schenectady, 97 N.Y. 2d 78, 83, (2001), that Brown created "a narrow remedy."  See, e.g., Muhammad v. New York City Transit Auth., 450 F.Supp.2d 198, 211 (E.D.N.Y. 2006).  Plaintiff's broad construction of Brown was flatly rejected by the Second Circuit in Allen, 665 F.App'x at 13, a case that plaintiff

defendants, including the City.

In conclusion, defendants' motion to dismiss plaintiff's claims under the New York State Constitution should be granted in its entirety.[27]

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendants' motion for judgment on pleadings be granted only as to (1) plaintiff's malicious prosecution, prolonged detention and fair trial/Brady claims against defendants Messa, Kenny and Buell; (2) plaintiff's claims against all defendants for abuse of process and supervisory liability; (3) plaintiff's failure to intervene claim against Buell; (4) plaintiff's claims against John Does 1-10; (5) plaintiff's Monell claim against the City; and (6) plaintiff's claims under the New York State Constitution.  Defendants' motion should be denied in all other respects.

Any objections to the recommendations contained herein must be filed with Judge Matsumoto on or before August 20, 2018.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

_____

fails to acknowledge, let alone distinguish.

[27] Although titled "Violations of the New York State Constitution," the ninth count in the Amended Complaint vaguely alleges that defendants' conduct violated plaintiff's "statutory and common law rights as guaranteed by the laws and Constitution of the State of New York." Am. Compl. ¶ 222.  To the extent that plaintiff purports to assert state common law torts - and even assuming *arguendo* his perfunctory reference to his common law rights is somehow sufficient to plead unnamed common law torts - all of his state law claims, including his state constitutional claim against the City, should be dismissed, based on plaintiff's failure to plead compliance with New York State's notice-of-claim requirements.  See N.Y. Gen. Mun. Law § 50-e; Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793-96 (2d Cir. 1999); Calicchio v. Sachem Cent. Sch. Dist., 185 F.Supp.3d 303, 317 (E.D.N.Y. 2016); Brooks v. County of Nassau, 54 F.Supp.3d 254, 257-58 (E.D.N.Y. 2014).

6(a), 6(d), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

      **SO ORDERED.**

**Dated: Brooklyn, New York**
       **August 6, 2018**

      /s/     *Roanne L. Mann*

      **ROANNE L. MANN**
      **CHIEF UNITED STATES MAGISTRATE JUDGE**